IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM EDWARD LOWRY,<br>  *a.k.a. William Edward Lowery* | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-16-3164 |
| DR. KIM JONES FEARING, *et al.* | * | |
| Defendants | * | |

\*\*\*

**MEMORANDUM OPINION**

This is a civil rights case filed pursuant to 42 U.S.C. § 1983 by Plaintiff William Edward Lowry, a patient involuntarily committed to the custody of the Maryland Department of Health and Mental Hygiene (DHMH). Pending before the Court is Defendants' motion to dismiss and for summary judgment. ECF No. 5. Lowry has filed his own motions for summary judgment (ECF Nos. 4, 7), and oppositions to Defendants' motion (ECF Nos. 9, 14, 17). Lowry has also filed a motion for leave to file a surreply (ECF No. 21). The matters pending before the Court have been adequately briefed by the parties; no hearing is required (*see* Local Rule 105.6 (D. Md. 2016). For the following reasons, Lowry's motion for leave to file a surreply will be denied, Defendants' motion to dismiss or for summary judgment will be granted, Lowry's motions for summary judgment will be denied, and the complaint for monetary damages will be dismissed. Defendants will, however, be required to brief other matters further as set forth herein.

I.    Complaint Allegations

Lowry, who is proceeding *pro se*, alleges that he is being held improperly via involuntary commitment at Clifton T. Perkins Hospital Center ("Perkins"), and seeks one million dollars in damages as a result. In his complaint, Lowry claims that his defense counsel had coerced him in

an underlying criminal case to enter an *Alford*[1] plea with the understanding that he would be released in 50 days. ECF No. 1 at p. 3. Lowry further claims that, at the end of the 50 days, the defendant Assistant Attorney General Rhonda Edwards stated that if he agreed to an additional 90 day delay, he would be released. *Id*. Because the hearing was delayed, Lowry claims his two expert witnesses who were prepared to testify at the first scheduled hearing, were not present at the later scheduled hearing. *Id*.

Further, in an attempt to undermine the validity of his continued commitment, Lowry claims that psychologist, Dr. Kim Jones Fearing, provided no support for her opinion that Lowry poses a danger to himself or others. *Id*. at p. 4. He claims that Dr. Annette Hanson also offered an opinion that Lowry was not competent to stand trial; and that Dr. Danielle Robinson stated that Lowry was not competent to stand trial after he received an additional 6 months of treatment. *Id*. Lowry states that in February and March of 2014, Dr. Elizabeth Holt, a court forensic psychologist, testified that Lowry "was sane and should be released to community." ECF No. 1 at p. 5, *see also* ECF No. 17-1 (sealed, evaluation of Lowry's competence). To date, Lowry has not been released.

II.   Defendants' Response

Defendants explain that Lowry, who has a long history of mental illness, was committed to the custody of the DHMH after he was found not criminally responsible (NCR) on a 2012 charge of first-degree arson. Lowry had been released on bond for the 2012 case when he was charged with indecent exposure in 2014. On April 30, 2014, Lowry was found not competent to stand trial and committed to Perkins on May 9, 2014. ECF No. 5 at Ex. 1 & 2. Lowry suffers from bipolar disorder with psychotic features to include a "history of paranoia, persecutory

---

[1] An *Alford* plea permits a criminal defendant to enter the equivalent of a guilty plea by admitting there is enough evidence to convict him at trial, but maintaining his innocence. *See North Carolina v. Alford*, 400 U.S. 25 (1970).

delusions, bizarre delusions, auditory hallucinations as evidence[d] by observed responses to internal stimuli, illogical and disorganized thinking, irritability, intrusiveness, aggression, threats of violence, impulsivity, lack of insight into illness and need for medication, and poor judgment." ECF No. 5 at Ex. 3. Lowry has also been involuntarily hospitalized at Sheppard Pratt Hospital in 1985; at Harford Memorial Hospital in 2001, 2005, and 2010; and at Spring Grove Hospital from April 2011 to July 2011. *Id*. at Ex. 3.

Defendants also clarify that Lowry was entitled to a "50 day release hearing" before an Administrative Law Judge (ALJ) pursuant to Md. Code Ann., Crim. Proc. § 3-115, but both counsel agreed to a postponement until October 23, 2014. At the October hearing, Perkins staff opposed Lowry's release based on his continued denial that he suffers from a mental illness, his lack of insight regarding the need to take prescribed medications, and because "following his NCR finding, he was discovered exposing himself to children in a play area in a manner similar to a situation in which he has been previously found." ECF No. 5 at Ex. 5. The ALJ concluded that Lowry was not eligible for conditional release. *Id*. Lowry did not file exceptions to the ALJ's decision and the Circuit Court for Harford County adopted the ALJ's findings and recommendations. *Id*. at Ex. 6.[2]

Lowry began refusing his medications in July of 2015. When Lowry stopped taking the prescribed medication, his condition deteriorated with "more active symptoms." *Id*. at p. 3. His behavior when off medication is described as follows:

> He became more irritable, intrusive, oppositional and hostile. He was paranoid of his psychiatrist and at one point he admitted to having violent thoughts about harming his treating psychiatrist. In August 2015 he penned a letter to this effect. He also approached a patient who was known to be extremely assaultive and told him that his father was deceased (not true). This unsafe behavior exposed Mr. Lowry to considerable risk for retaliatory violence.

---

[2] Drs. Annette Hanson and Danielle Robinson also found Lowry not competent to stand trial in evaluations dated June 11, 2015 and March 9, 2016 respectively. ECF No. 5 at Ex. 11 and 12.

3

As a result, three clinical review panels recommended that Lowry should be forcibly medicated. *See* Md. Code Ann., Health-Gen. § 10-708 (governing clinical review panels), *see also* ECF No. 5 at Ex. 3 (March 23, 2016 clinical review panel), Ex. 7 (September 3, 2015 review panel), and Ex. 8 (December 24, 2015 clinical review panel). Lowry appealed all three of the recommendations to an ALJ who upheld the decisions of each. *Id*. Lowry then appealed the December 2015 decision of the ALJ to the Circuit Court for Howard County. The appellate court affirmed the administrative decision. ECF No. 5 at Ex. 9 (Order, *In the Matter of William Lowery*, Case No. 13-C-16-1066333; February 10, 2016). The medication Lowry is currently prescribed is Haloperidol and Thyroxin. He takes this medication voluntarily now,[3] but is still unable to assist his attorney in his defense for his open criminal cases. ECF No. 5 at Ex. 10 (Psychiatry ITP Note of Kim Jones-Fearing, M.D., August 31, 2016), *see also* ECF No. 13 at Ex. 1, p. 2 (Affidavit of Michael Menard, R.N.).

III. <u>Standard of Review</u>

A. Motion to Dismiss

In reviewing a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513

---

[3] Lowry's compliance with medication began in September 2016 after several incidents of noncompliance that occurred in July and August of 2016. ECF No. 5 at Ex. 10.

4

(2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The United States Supreme Court has explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994)) (once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

B.  Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Defendants' dispositive submission will be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airway*s, 510 F.3d 442, 450 (4th Cir. 2007).

IV.     Analysis

Defendants first argue that Lowry's claims stemming from the Attorney General's alleged promise of release in exchange for his agreement to postpone his hearing do not state a constitutional claim or otherwise allege a violation of federal law and so must be dismissed. Defendants also argue that Plaintiff's continued confinement is proper as he remains a danger to himself or others. *See* ECF No. 5 at Ex. 11.

Lowry's complaint must be analyzed within the scope of Fourteenth Amendment protections afforded involuntary patients at state psychiatric facilities. In particular, involuntarily committed patients such as Lowry must be provided with services necessary to ensure their "reasonable safety" from themselves and others. *Youngberg v. Romeo*, 457 U.S. 307 (1982). Indeed, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg,* 457 U.S. at 321- 22 (claim that hospital officials knew patient was being injured but failed to intervene; improperly restrained patient for prolonged periods; and were not providing appropriate treatment or training for his mental retardation); *see also Patten v. Nichols*, 274 F.3d 829, 837 (4th Cir. 2001) (applying *Youngberg* standard to involuntarily committed psychiatric patients). Under the *Youngberg* standard, the state must provide Lowry with "adequate food, shelter, clothing, and medical care." *Id*. at 315. According to the United States Court of Appeals for the Fourth Circuit, there is "no constitutionally significant difference between the nature of the protection-from-harm claims . . . and the denial-of-medical-care [claims]." *Patten,* 274 F.3d at 838.

Subsumed within these rights is Lowry's "significant constitutionally protected liberty interest in avoiding the unwarranted administration of antipsychotic drugs." *Sell v. United States*, 539 U.S. 166, 178 (2003), quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990).

7

"[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). "Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions." *Youngberg*, 457 U.S. at 324. The Due Process Clause of the Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. *See DeShaney v. Winnebago*, 489 U.S. 189, 200 (1989); *Youngberg*, 457 U.S. at 324.

In determining whether Lowry's due process rights have been violated in this context, the Court must balance the "liberty of the individual" and the "demands of an organized society." *Youngberg*, 457 U.S. 320. In doing so, the court applies the "professional judgment" standard, in which "the Constitution only requires that the Court make certain that professional judgment in fact was exercised." *Youngberg*, 457 U.S. at 321 (internal citations omitted). That is, medical decisions made by professionals in the commitment context are presumptively valid. "Liability may be imposed only when the decision by the professional is such a *substantial departure* from . . . professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323 (emphasis added)

Lowry principally relies on his April 15, 2014 pre-trial psychological evaluation conducted by Elizabeth Holt, PsyD, whom he believes had found him to be "completely sane." ECF Nos. 9 and 17. Lowry further claims that he has resided at Perkins without incident for three years which supports that he is not a danger to himself. ECF No. 9. That he had been declared not competent to stand trial is, in his view, simply an effort by the defendant doctors to protect themselves from suit. *Id*.

Here, the evidence construed in the light most favorable to Lowry supports the propriety of his continued commitment and the lack of actionable infirmities in the related commitment proceedings and treatment that he received. Lowry's belief that his symptoms worsened because he was prescribed medication appears to be a part of the illness he suffers. Even the evidence Lowry presents in support of his complaint establishes that the key to managing Lowry's mental illness is through prescribed medication. *See* ECF No. 17-1 at p. 17 (Dr. Holt noting that Lowry's compliance with psychotropic medication has eliminated symptoms of schizophrenia). Accordingly, Lowry's claim for monetary damages in connection with his commitment proceedings and related treatment must fail.

To the extent that Lowry claims that he is no longer in need of required continued hospitalization, ample evidence demonstrates that the professional judgment of those charged with his care support his continued commitment. Put differently, nothing presented in this case suggests that Lowry's hospitalization and continuing course of care has fallen so far below a professional standard as to be arbitrary and unprofessional. *See Patten,* 274 F.3d at 843. Defendants are entitled to summary judgment on the claim for monetary damages.

To the extent that Lowry's claim is a challenge to the validity of his continued confinement going forward, it is properly reviewable as a petition for habeas corpus. Pretrial federal habeas relief is available under 28 U.S.C. § 2241 if the petitioner is in custody, has exhausted state court remedies, and special circumstances exist that justify intervention by the federal court. *See Dickerson v. Louisiana*, 816 F.2d 220, 224-26 (5th Cir. 1987). Exhaustion is established where both the operative facts and controlling legal principles of each claim have been fairly presented to the state courts. *See Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citations omitted). In the pretrial context, federal courts must abstain from exercising jurisdiction over a claim that may be resolved through trial of the merits or by other state

9

procedures available for review of the claim. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 489-90 (1973).

The Court cannot discern from this record whether Lowry has exhausted his state remedies.[4] Lowry, as a detainee committed to a mental health facility, maintains the right under Maryland law to file a petition for release in state circuit court located in the county where he resides, where he resided before admission to the facility, or where the facility is located. *See* Md. Code Ann., Health-Gen. § 10-805(a) and (b). Denial of an application for release may be appealed. *See id.,* § 10-805(h). However, the Court is unable to conclude whether Lowry is currently represented by counsel, has access to the appropriate state court for review of his continued involuntary commitment, or has availed himself of those remedies. Accordingly, this court will require counsel for defendants to file a status report on the issue of exhaustion. Upon receipt of that information, the court will determine whether Lowry's claim regarding the legality of his confinement may be heard or is subject to dismissal without prejudice for failure to exhaust state remedies. A separate order follows.

June 12, 2017                                /S/
                                                               PAULA XINIS
                                                               United States District Judge

---

[4] Lowry repeatedly states that he has filed numerous motions in his state criminal cases. ECF No. 9. He claims he no longer has an attorney and that the state court is ignoring his motions. He cites numerous alleged infirmities in the criminal cases against him for arson and indecent exposure including ineffective assistance of counsel; witnesses perjuring themselves; being unable to hear the proceedings because he is deaf; and being coerced into entering a plea of NCR. *Id*. at Ex. 1 – 5. Thus, it appears that remedies remain available to him in state court.